529 A.2d 480

**COMMONWEALTH of Pennsylvania**

v.

**Luis TOLEDO, Appellant.**

Superior Court of Pennsylvania.

Argued March 31, 1987.

Filed July 21, 1987.

Patricia Wenger, Assistant Public Defender, Harrisburg, for appellant.

Yvonne A. Okonieski, Deputy District Attorney, Harrisburg, for Com., appellee.

Before WIEAND, BECK and CERCONE, JJ.

WIEAND, Judge:

Luis Toledo was tried by jury and was found guilty of murder of the first degree in connection with the shotgun slaying of Lazaro Gonzalez in Harrisburg on July 26, 1985. On direct appeal from a sentence of life imprisonment, Toledo contends that the evidence was insufficient to sustain the finding of first degree murder or, in the alternative, that the verdict was contrary to the weight of the evidence. He also argues that the trial court erred when it (1) refused to charge the jury on "heat of passion" voluntary manslaughter; (2) permitted selected portions of the trial testimony to be read back to the jury; and (3) refused to declare a mistrial because of comments made by the prosecutor during closing argument. We find no merit in these contentions and, therefore, affirm the judgment of sentence.

The test to be applied in determining the sufficiency of the evidence is whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the jury could have found that each element of the offense was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt. *Commonwealth v. Jackson*, 506 Pa. 469, 472–473, 485 A.2d 1102, 1103 (1984).

The crime of first degree murder is defined as follows:

**(a) Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

18 Pa.C.S. § 2502(a). Intentional killing is defined as a "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(d).

The evidence in this case showed that, on July 26, 1985 at or about 10:55 a.m., Lazaro Gonzalez, the victim, was shot at close range in the lower back by an assailant who used a sawed-off shotgun. An eyewitness to the shooting, Jose Saez, testified that he observed defendant arguing with the victim moments before the shooting, heard a shotgun blast, and saw the defendant flee the scene with a sawed-off shotgun in his possession.

The deliberate use of a deadly weapon upon a vital area of the body of a victim is sufficient to permit a jury to infer a specific intent to take life, absent any circumstances to negate such an intention. *Commonwealth v. Crowson*, 488 Pa. 537, 543, 412 A.2d 1363, 1365 (1979); *Commonwealth v. Ewing*, 439 Pa. 88, 91, 264 A.2d 661, 663 (1970). See also: *Commonwealth v. Clemmons*, 312 Pa.Super. 475, 479–480, 459 A.2d 1, 3 (1983), *rev'd on other grounds*, 505 Pa. 356, 479 A.2d 955 (1984). Appellant in this case was identified as the actual killer by an eyewitness to the shooting. The evidence, therefore, was sufficient to sustain the jury's verdict. See: *Commonwealth v. Coyle*, 415 Pa. 379, 385, 203 A.2d 782, 785 (1964). The fact that the eyewitness did not actually observe appellant pull the trigger does not render the evidence insufficient, for a verdict may rest in whole or in part upon circumstantial evidence. See: *Commonwealth v. Culbreath*, 439 Pa. 21, 264 A.2d 643 (1970).

The decision to grant or deny a motion for a new trial on the ground that the verdict was against the weight of the evidence is committed primarily to the sound discretion of the trial court. *Commonwealth v. Pronkoskie*, 498 Pa. 245, 445 A.2d 1203 (1982). A new trial will be granted only

where the verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Datesman,* 343 Pa.Super. 176, 182, 494 A.2d 413, 416 (1985). In view of the evidence received at trial in this case, it is clear that the trial court did not abuse its discretion in refusing to find that the verdict was contrary to the weight of the evidence.

Appellant also contends that the trial court erred when it refused to instruct the jury, upon request, regarding a "heat of passion" voluntary manslaughter defense. We agree with the Commonwealth and the trial court that the facts in the case did not warrant such a charge. The evidence suggested that Gonzalez had died as a result of a single shotgun blast to the lower back. There was no evidence that the shooting had been provoked. The defense offered at trial was one of mistaken identity. Appellant argues on appeal that he was nevertheless entitled to a "heat of passion" voluntary manslaughter instruction because of the "mercy dispensing power" of the jury.

This had been the holding of *Commonwealth v. Jones,* 457 Pa. 563, 319 A.2d 142 (1974), *cert. denied,* 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974). However, the rule had a short-lived history. Justice Nix (now Chief Justice), who had been the author of *Jones,* wrote in dissent in *Commonwealth v. Manning,* 477 Pa. 495, 384 A.2d 1197 (1978), where the Court extended the rule to "unreasonable belief" voluntary manslaughter, that the enactment of the 1972 Crimes Code afforded an opportunity to reassess the wisdom and utility of the *Jones* rule and to set it aside. The term " 'mercy dispensing power,' " he observed, was a " 'euphemism to justify a rationally unsupportable verdict.' " Such an approach invited arbitrary action by juries and left a reviewing court powerless to remedy discriminatory verdicts. *Id.,* 477 Pa. at 504, 384 A.2d at 1201, quoting *Commonwealth v. Gartner,* 475 Pa. 512, 533, 381 A.2d 114, 125 (Nix, J. concurring and dissenting).

In *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982), a majority of the Court, in reliance upon *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982)

and *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), observed that " '[d]ue process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction.' " *Id.* 500 Pa. at 72, 454 A.2d at 967, quoting *Hopper v. Evans, supra* at 611, 102 S.Ct. at 2053, 72 L.Ed.2d at 373 (emphasis in original). The majority also noted that as a Court it had "rejected the practice of charging the jury, on request, on the crime of involuntary manslaughter without regard to the evidence...." *Id.* 500 Pa. at 73, 454 A.2d at 967, citing *Commonwealth v. White,* 490 Pa. 179, 184, 415 A.2d 399, 401 (1980) and *Commonwealth v. Williams,* 490 Pa. 187, 415 A.2d 403 (1980). Therefore, a majority of the Court concluded, "[i]n an appropriate case, this Court would have to consider whether *Roberts v. Louisiana, supra,* would require a similar result regarding instructions on voluntary manslaughter in the absence of evidence to support such an offense." *Id.* 500 Pa. at 73, 454 A.2d at 967.

This occurred in *Commonwealth v. Carter,* 502 Pa. 433, 466 A.2d 1328 (1983), when the Supreme Court held that a defendant was entitled to an "unreasonable belief" voluntary manslaughter charge *only* where the offense had been made an issue in the case and the evidence would reasonably support such a verdict. Finally, in *Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700 (1984), in response to a defense argument, the Court held that the practice of instructing a jury, upon defense request, regarding the elements of voluntary manslaughter whether or not evidence existed to support a charge, did not inject an element of arbitrariness by inviting the jurors to disregard their oaths to apply the law to the evidence presented. By way of a footnote, the majority wrote, without dissent, as follows:

There is little or no vitality left to this practice which stems from this Court's decisions in *Commonwealth v. Jones,* 457 Pa. 563, 319 A.2d 142, *cert. denied,* 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974) and *Commonwealth v. Manning,* 477 Pa. 495, 384 A.2d 1197 (1978).

The continuing validity of the rule was seriously undermined by our decisions holding that an instruction on involuntary manslaughter may be given only where the evidence would support such a verdict. *Commonwealth v. White*, 490 Pa. 179, 415 A.2d 399 (1980); *Commonwealth v. Williams*, 490 Pa. 187, 415 A.2d 403 (1980). The death knell to the practice regarding instructions on voluntary manslaughter was sounded in *Commonwealth v. Carter*, 502 Pa. 433, 466 A.2d 1328 (1983) wherein a majority of this Court held that a trial court may charge on the "unreasonable belief" subclass of voluntary manslaughter, 18 Pa.C.S.A. § 2503(b), only where evidence exists that would support such a verdict. 502 Pa. 433, 466 A.2d 1328. The majority did not decide the propriety of the practice of charging the jury on "heat of passion" voluntary manslaughter, 18 Pa.C.S.A. § 2503(a) in the absence of evidence, 502 Pa. 441 n. 8, 466 A.2d 1331 n. 8, although the concurring opinions of this author and Mr. Justice McDermott would have abolished that practice as well.

*Id.*, 504 Pa. at 450 n. 10, 475 A.2d at 711 n. 10 (emphasis in original).

■ The fact that *Jones* has not been overruled expressly by the Supreme Court does not mean that inferior courts can blithely ignore the subsequent history of its holding or the guidance given by the Supreme Court in the foregoing footnote. In view thereof, we will not hold, as appellant would have us do, that the trial court committed error by refusing a defense request to charge on "heat of passion" voluntary manslaughter where such a defense was not made an issue at trial and where the evidence would not reasonably have supported such a finding. We are unable to conclude rationally that a different rule should obtain where voluntary manslaughter is based on "heat of passion" than where it is based on "unreasonable belief."

■ Moreover and in any event, the absence of such an instruction in this case was harmless. In *Commonwealth v. Mays*, 361 Pa.Super. 554, 523 A.2d 357 (1987), a panel of

this Court held that a trial court's refusal to instruct on voluntary manslaughter did not prejudice the defendant. We might well say, as did the *Mays* Court,

> [i]n the present case, the trial court instructed on first, second and third degree murder. The jury could have exercised a mercy-dispensing power and brought back a verdict of third-degree murder against [defendant]. Instead, the jury found [defendant] guilty of second-degree murder. We are therefore persuaded that [defendant] suffered no prejudice from the trial court's denial of a request for charge on Section 2503(a), "heat of passion" voluntary manslaughter.

*Id.*, 361 Pa.Superior Ct. at 563, 523 A.2d at 361. Appellant is not entitled to a new trial in this case because of the trial court's refusal to instruct the jury on voluntary manslaughter.

Appellant next contends that the trial court erred when it allowed selected portions of the eyewitness's testimony to be read to the jury. A request therefor had been made during deliberations by the jury to assist it in determining the sequence of events between the firing of the shotgun and the witness's identification of appellant as the assailant.

 In *Commonwealth v. Bell*, 328 Pa.Super. 35, 476 A.2d 439 (1984), this Court reviewed the applicable law as follows:

> When a jury requests that recorded testimony be read to it to refresh its memory, it rests within the trial court's discretion to grant or deny such request. *Commonwealth v. Peterman*, 430 Pa. 627, 244 A.2d 723 (1968); *Commonwealth v. McBall*, 316 Pa.Superior Ct. 493, 463 A.2d 472 (1983). The court must be careful so as not to place undue emphasis upon those portions which are requested. *Peterman, supra, Commonwealth v. Coley*, 297 Pa.Superior Ct. 435, 444 A.2d 110 (1982); *Commonwealth v. Banks*, 267 Pa.Superior Ct. 10, 405 A.2d 1277 (1979). The parameters concerning the extent that testimony should be read to the jury are to be set by the juror's request. *Commonwealth v. Peterman, supra.*

Hence the court, if it deems it appropriate, may permit the jury to hear only a portion of a witness' testimony. *See Commonwealth v. Coley, supra.*

*Id.,* 328 Pa.Superior Ct. at 54, 476 A.2d at 449. In the instant case, the trial had been interrupted by a sudden snowstorm that closed the courthouse for one full day. Therefore, it cannot be said that the trial court abused its discretion by allowing the jury's request to have its collective recollection of the prior testimony refreshed. Although the cross-examination of the witness had not been read to the jury, defense counsel expressed satisfaction that the jury had received the information which was relevant and necessary to satisfy the jury's request. See: N.T. 2/12/86, at 99. There was no undue emphasis placed upon that portion of the testimony which was read to the jury. Therefore, we perceive no abuse of discretion by the trial court.

Finally, appellant contends that he was prejudiced by inflammatory and prejudicial comments made by the prosecuting attorney during closing argument. The first of these was as follows:

When you go back to consider the evidence, ladies and gentlemen, I think perhaps this can synthesize your task. Make it very simple for you. Any doubt that you have must arise from the evidence that is presented. The evidence that has been presented was that a man was shot in the back at close range on a downward angle and it was observed by a man who knew the killer. *Is there anything to suggest otherwise than that this Defendant committed the slaying?* And I mentioned that to you because the Defense attorney said pay careful attention to cross-examination. Pay careful attention to that because the full story sometimes doesn't come out until cross-examination.

Closing Arguments, 2/12/86, at 32 (emphasis added). Appellant contends that this was an improper reference to his failure to testify.

■ It is correct, as appellant argues, that a comment by the prosecution concerning the failure of an accused to

testify at trial is constitutionally impermissible. *Commonwealth v. Young*, 477 Pa. 212, 217, 383 A.2d 899, 901 (1978). See also: *Commonwealth v. Brenizer*, 467 Pa. 347, 351, 356 A.2d 784, 785–786 (1976). However, a prosecutor is not barred from commenting on the "uncontroverted" strength of its case unless such comments unequivocally call attention to the defendant's failure to testify. *Commonwealth v. Kloch*, 230 Pa.Super. 563, 589, 327 A.2d 375, 389 (1970). In the instant case, the comment by the prosecuting attorney was made in response to a defense argument and referred to the uncontradicted nature of the evidence which had been presented by the Commonwealth. The remark did not call attention to appellant's failure to testify. Cf. *Commonwealth v. Fulton*, 318 Pa.Super. 470, 465 A.2d 650 (1980) (prosecutor may properly respond to defense counsel's argument which questions the credibility of witness). Appellant was not entitled to a mistrial because of the prosecuting attorney's argument.

Appellant also contends that the prosecutor improperly appealed to the prejudices and fears of the jury by the following remarks:

> What about this common threat of fear that we talked about? Jose Saez told you that he came forward, but only after a friend had arranged for the interview. And all those people, all those people were out there. All those people were around the area where this shooting took place and only one man comes forward. Only one young man. And you heard Detective Macon. He interviewed how many people? Ten? Fifteen people? And who does he get? One man to come forward. And sometimes, you know, that just is the way it is, because the crimes that you read about in the paper, the crimes of violence that sometimes tear a community apart will cause that. It will cause those windows to shut. Cause those curtains to pull, cause those people to stay inside and surrender the streets, surrender the community, because of fear.

But you know, many times it takes just that one person, that one person who is going to put everything on the line as he told you from the stand, to have enough courage to stand up and say I am not going to give into fear, I am not going to surrender the community where my mother-in-law lives, where I walk with my children, the people who, for no reason, will take another person's life.

That is the courage of one man to come forward and tell you that and it has been suggested.

. . . .

Do not surrender the community to be gripped by fear by those for no reason or any reason would shoot an unarmed man in the back.

Please be the conscious [sic] of the community, accept the facts as they have been presented to you and convict this Defendant of first degree murder. Thank you. Closing Arguments, 2/12/86, at 30–31, 36.

■ A prosecutor should not appeal to the prejudices or fears of a jury. *Commonwealth v. Gilman*, 470 Pa. 179, 368 A.2d 253 (1977); *Commonwealth v. Harvell*, 458 Pa. 406, 327 A.2d 27 (1974). The prosecutor is a quasi-judicial officer whose duty is to seek justice, not convictions. His or her "position as both an administrator of justice and an advocate 'gives him [or her] a responsibility not to be vindictive or attempt in any manner to influence the jury by arousing their prejudices.'" *Commonwealth v. Gilman*, *supra* 470 Pa. at 188, 368 A.2d at 257, quoting *Commonwealth v. Revty*, 448 Pa. 512, 516, 295 A.2d 300, 302 (1972). Moreover, "[t]he determination of guilt must *not* be the product of fear or vengeance but rather intellectually compelled after a disinterested, impartial and fair assessment of the testimony that has been presented." *Commonwealth v. Harvell*, *supra*, 458 Pa. at 411, 327 A.2d at 30 (emphasis in original).

■ Not every intemperate or uncalled for remark, however, requires a new trial.

[C]omments by a prosecutor do not constitute reversible error unless the "unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Anderson, supra* at 501 Pa. 282, 461 A.2d 211; *Commonwealth v. Upsher,* 497 Pa. 621, 627, 444 A.2d 90, 93 (1982).

*Commonwealth v. D'Amato,* 514 Pa. 471, 490, 526 A.2d 300, 309 (1987), quoting *Commonwealth v. Carpenter,* 511 Pa. 429, 439, 515 A.2d 531, 536 (1986). "[T]he prejudicial effect of the prosecutor's remarks must be evaluated in the context in which they occurred." *Commonwealth v. D'Amato, supra,* 514 Pa. at 490, 526 A.2d at 309. Viewing the prosecutor's comments in this case against the defense attack on the witness's credibility and the weight of the Commonwealth's case, and viewing the prosecutor's argument as a whole, we are unable to conclude that the unavoidable effect thereof was to so permeate the trial with bias and hostility toward the appellant that the jurors could not render a true verdict according to the evidence.

■■■ Appellant contends finally that the prosecutor improperly suggested that defense counsel had engaged in unethical conduct in the gathering and presentation of evidence. During closing argument the prosecutor remarked:

Use that analogy that the Defense attorney suggests to you that sometimes the mind's eye isn't like a camera. Well, I am glad it isn't, because if it is anything like the photographs that were taken with that camera, we would have had Jose Saez standing on the West Shore, seeing what is taking place on 13th Street.

You heard him. You took the pictures so that the signs are in it and the Coke machines are in it. What does that suggest to you? When you look at those photos, use those as an aid just to get a feel for the scene, but remember, the testimony is what you consider. The facts

are what you use to judge guilt or innocence as the case may be.

Closing Arguments, 2/12/86, at 33. At trial, appellant had introduced into evidence various photographs of the scene of the shooting in an apparent effort to pinpoint the spot from which Saez had observed the shooting. When defense counsel attempted to convey to the jury that Saez's supposed line of sight was obstructed by a hanging sign depicted in one of the photographs, Saez protested that the picture had not been taken from the same spot at which he had been standing when he witnessed the shooting. The prosecutor's closing argument did not imply that defense counsel had acted unethically in the taking of the photographs; rather, it was meant to suggest that the photographs were merely an aid in reconstructing the scene of the shooting and did not constitute incontrovertible evidence that Saez's line of sight had in fact been obstructed by the sign. The trial court did not err when it denied appellant's motion for mistrial because of the prosecuting attorney's closing argument.

Judgment of sentence affirmed.