603 A.2d 1039

COMMONWEALTH of Pennsylvania, Appellant,

v.

Felix Carlos HERNANDEZ, Appellee.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Felix Carlos HERNANDEZ, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 12, 1991.

Filed Feb. 24, 1992.

Charles B. Coleman, Asst. Dist. Atty., Reading, for Com., appellant in No. 1734 and for Com., appellee in No. 1955.

Gary L. Dorsett, Asst. Public Defender, Reading, for appellant in No. 1955 and appellee in No. 1734.

Before MONTEMURO, HUDOCK and BROSKY, JJ.

HUDOCK, Judge:

Both the Commonwealth and Hernandez have appealed from the judgment of sentence imposed upon Hernandez following a jury trial on charges of first-degree murder and related charges. We vacate the judgment of sentence and remand for new trial.

The pertinent facts and procedural history are as follows: On July 4, 1990, Hernandez attended a party taking place at the Glenside Housing Projects in Reading, Pennsylvania. Also present at the party was Enrique Lopez, (the victim), and the victim's nephew, Antonio Velez, (Velez). At approximately 5:00 p.m., the victim and Velez went inside the home of Velez's aunt. This same woman was Hernandez's girlfriend. Hernandez then entered the house and told the victim and Velez to go outside to drink. At this time, the victim became angry and followed Hernandez out of the house. The victim then pushed Hernandez down the stairs and Hernandez fell to the sidewalk. The victim pulled a knife and started chasing Hernandez around a car. Hernandez and the victim had been friends for sixteen years. As he was being chased, Hernandez stated to the victim, "... put the knife away. You know how much I love you, I don't want to fight with you." (N.T. 3/21/91 at p. 395). Testimony varied as to recollections of what occurred next. While some witnesses to the event, including Hernandez,

testified that Hernandez was handed a gun while he was struggling with the victim, other witnesses testified that the victim had put the knife away and turned away from Hernandez, Hernandez went into the house and retrieved a gun, and then shot the victim in or around the back.[1]

Hernandez was subsequently charged and tried for criminal homicide,[2] murder (first degree),[3] murder (third degree),[4] voluntary manslaughter,[5] two counts of aggravated assault,[6] recklessly endangering another person,[7] possession of an instrument of crime,[8] and firearms not to be carried without a license.[9] Upon the completion of testimony, the trial court gave the appropriate instructions to the jury on these charges, as well as a charge regarding self-defense and voluntary intoxication. On its own initiative the trial court also included the following "mercy" charge as to the murder counts:

> Even if you find [Hernandez] guilty of first degree murder, you may, nevertheless, exercise your power of mercy and return a verdict, only if of murder of, [sic] say, the third degree. By the same token, if you find [Hernandez] guilty of murder in the first or third degree, you may again, exercise your power of mercy and return a verdict of voluntary manslaughter. Now whether or not you wish to exercise that power or not, is solely up to you as the jury.

1. As stated by the trial court: "Witnesses had a varied impression of whether the victim was shot in the front, side or back or a combination of all three." (Trial Court Opinion at p. 2). Autopsy reports revealed that the victim was shot in the upper arm and through the back of the chest.

2. 18 Pa.C.S.A. § 2501(a).

3. 18 Pa.C.S.A. § 2502(a).

4. 18 Pa.C.S.A. § 2502(c).

5. 18 Pa.C.S.A. § 2503(a), § 2503(b).

6. 18 Pa.C.S.A. § 2702(a)(1), § 2702(a)(4).

7. 18 Pa.C.S.A. § 2705.

8. 18 Pa.C.S.A. § 907(a), 907(b).

9. 18 Pa.C.S.A. § 6106(a). The trial court granted Hernandez's motion for demurrer on this charge prior to charging the jury.

(N.T. 3/22/91 at p. 508). The trial court did not provide the jury with further instruction as to how they were to mark their verdict sheet in the event they chose to exercise mercy.

Following deliberation, the jury returned a verdict of "guilty with mercy" on the charge of first degree murder. (N.T. 3/22/90 at p. 550). The jury returned the verdict sheet without making any finding as to third degree murder and voluntary manslaughter.[10] The trial court, upon noting the verdict, called a sidebar conference and counsel was permitted to view the verdict sheet. After discussion, it was decided that the jury should not be involved any further in the case. Although the jury was polled for unanimity as to the first degree murder verdict, the members were not asked to explain their response. The trial court then deferred sentencing, reserving the interpretation of the jury's verdict.

At sentencing, the trial court construed the verdict of first degree murder "guilty with mercy" to be an intent to invoke the mercy-dispensing power of the jury. Thus, the trial court concluded that the intent as expressed on the verdict slip was equivalent to a constructive verdict of murder in the third degree. In its appeal, the Commonwealth contends, and supports with federal caselaw, that "with mercy" should be treated as mere surplusage and, therefore, Hernandez should have been sentenced to a first degree murder charge. Hernandez claims that the trial court usurped the function of the jury, could not construe their true intent, and, therefore, that the case must be remanded for new trial and/or the entry of judgment notwithstanding the verdict. In the alternative, Hernandez contends that the matter should be resolved in his favor and, upon remand, he should be sentenced on the voluntary manslaughter charge.

■ A panel of this Court has recently summarized the present status of the mercy-dispensing function of the jury as follows:

**10.** Hernandez was found guilty of all the remaining charges.

In *Commonwealth v. Jones*, 457 Pa. 563, 573–574, 319 A.2d 142, 148, *cert. denied*, 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974), our Supreme Court held that "a defendant under indictment of murder will be entitled, *upon request*, to have the jury advised of its power to return a verdict of voluntary manslaughter." (emphasis in original). Although *Jones* was based upon a killing under the Penal Code of 1939, the rule of that case was extended to cover a murder brought under the Crimes Code of 1972, thus giving a defendant charged with murder the unconditional right to request an instruction on voluntary manslaughter under Section 2503(b). *Commonwealth v. Manning*, 477 Pa. 495, 384 A.2d 1197 (1978). Upon reflection, the Supreme Court overruled *Manning* in *Commonwealth v. Carter*, 502 Pa. 433, 466 A.2d 1328 (1983), finding that the rule of *Jones* had no application under Section 2503(b), the "unreasonable killing" voluntary manslaughter. However, because the trial court in *Carter* instructed the jury as to a Section 2503(a), "heat of passion killing," the Court did not determine whether a charge on Section 2503(a) need be given pursuant to that provision. *Id.*, 502 Pa. at 441 [n. 8], 466 A.2d at 1331 n. 8. Hence, because *Carter* overruled *Manning* and, in turn, *Jones*, only as to the issuance of an instruction on Section 2503(b), we are obligated to apply the rule of *Jones* where a request for a "heat of passion" instruction has been made.

*Commonwealth v. Mays*, 361 Pa.Super. 554, 562, 523 A.2d 357, 360–61 (1987) (footnote omitted), *alloc. den'd.*, 516 Pa. 613, 531 A.2d 780. *See also Commonwealth v. Mignogna*, 401 Pa.Super. 188, 585 A.2d 1 (1990) (Pennsylvania law still requires, upon request, a heat of passion instruction even in the absence of such evidence).

However another panel of this Court has concluded that no vestige of *Jones, supra*, remains. Judge Wieand, in *Commonwealth v. Toledo*, 365 Pa.Super. 224, 231, 529 A.2d 480, 484 (1987), *alloc. den'd.*, 517 Pa. 622, 538 A.2d 876, wrote as follows:

The fact that *Jones* has not been overruled expressly by the Supreme Court does not mean that inferior courts can blithely ignore the subsequent history of its holding or the guidance given by the Supreme Court in the foregoing footnote.[11] In view thereof, we will not hold, as appellant would have us do, that the trial court committed error by refusing a defense request to charge on "héat of passion" voluntary manslaughter where such a defense was not made an issue at trial and where the evidence would not reasonably have supported such a finding. We are unable to conclude rationally that a different rule should obtain where voluntary manslaughter is based on "heat of passion" than where it is based on "unreasonable belief."

All three cases are harmonized by the fact that all defendants were convicted of first or second degree murder, even though the court had instructed on a lesser degree of murder. The panels concluded that the juries could have exercised a mercy-dispensing power and brought back a

11. The footnote refers to our Supreme Court's decision in *Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700 (1984), which reads as follows:

There is little or no vitality left to this practice which stems from this Court's decisions in *Commonwealth v. Jones,* [*supra*], and *Commonwealth v. Manning,* [*supra*]. The continuing validity of the rule was seriously undermined by our decisions holding that an instruction on involuntary manslaughter may be given only where the evidence would support such a verdict. *Commonwealth v. White,* 490 Pa. 179, 415 A.2d 399 (1980); *Commonwealth v. Williams,* 490 Pa. 187, 415 A.2d 403 (1980). The death knell to the practice regarding instructions on voluntary manslaughter was sounded in *Commonwealth v. Carter,* [*supra*], wherein a majority of this Court held that a trial court may charge on the "unreasonable belief" sub-class of voluntary manslaughter, 18 Pa.C.S.A. § 2503(b), only where evidence exists that would support such a verdict. 502 Pa. 433, 466 A.2d 1328. The majority did not decide the propriety of the practice of charging the jury on "heat of passion" voluntary manslaughter, 18 Pa.C.S.A. § 2503(a) in the absence of evidence, 502 Pa. at 441 n. 8, 466 A.2d at 1331 n. 8, although the concurring opinions of this author and Mr. Justice McDermott would have abolished that practice as well.

*Commonwealth v. Toledo,* 365 Pa.Super. at 230–31, 529 A.2d at 483–84, citing *Commonwealth v. Frey,* 504 Pa. at 450 n. 10, 475 A.2d at 711 n. 10.

verdict of third degree murder, and by their failure to do so manifested a disinclination toward mercy. Hence, the defendant in each case suffered no prejudice from the failure to give the charge.

Like Judge Wieand in *Commonwealth v. Toledo, supra,* we are hard-pressed to accept the logic of the "last remnant" of the mercy-dispensing power of the jury. We too are unable to conclude rationally that a charge on "heat of passion" voluntary manslaughter, unsupported by the evidence, must be given upon request but that an "unreasonable belief" voluntary manslaughter charge need not be given when it is likewise unsupported by the evidence.

In the present case, there was evidence presented which, if believed, would support a verdict of voluntary manslaughter. Hernandez was charged with, and the jury was instructed in regard to, both types of voluntary manslaughter discussed in *Commonwealth v. Mays, supra.* Thus, whether the homicide committed by Hernandez constituted voluntary manslaughter was at issue. The trial court nevertheless decided to give the above mercy charge. The trial court supports its giving of the charge, stating that:

> no where is it found within Pennsylvania case law [sic] that a court cannot charge on mercy and thus instruct the jury that it can find a defendant guilty of a lesser included offense where the evidence adduced at trial would support such a finding. There is no absolute rule promulgated by our appellate courts expressly prohibiting a trial court from dispensing a mercy charge provided there is ample evidence to support the lesser included offenses. The rule enunciated against dispensing a mercy charge is applicable only to those limited situations where there is no factual support for the lesser included offense.

(Trial Court Opinion at p. 5) (citations omitted). Such a charge was inappropriate and could only lead to jury confusion. We cannot discern a distinction between giving a "mercy charge" in the form of an instruction on a lesser included offense in the absence of such evidence, and a

"mercy charge" which tells the jury that even if it finds a higher degree of homicide occurred based on the facts as it perceives them to be, it could return a verdict on a lesser included offense. In both situations the court is authorizing the jury to return a verdict based upon an emotional reaction rather than the facts presented.

The jury in the present case was required to determine whether Hernandez committed the homicide with a specific intent to kill, with malice, in the heat of passion, or under the unreasonable belief that his actions were justified. Thus, the jury, accepting as true one or both of the latter two options, was capable of returning a verdict of voluntary manslaughter based upon the evidence rather than mercy. Except for the possible remnant of the rule recognized by *Commonwealth v. Mays, supra,* discussed above, "[i]n *no* case will a defendant be entitled to a charge which invites the jury to return its verdict based upon mercy rather than fact." *Commonwealth v. Hart,* 388 Pa.Super. 484, 497, 565 A.2d 1212, 1218 (1989), *alloc. den'd.,* 525 Pa. 642, 581 A.2d 569, quoting *Commonwealth v. Grove,* 363 Pa.Super. 328, 345, 526 A.2d 369, 378 (1987) (emphasis in original), *alloc. den'd.,* 517 Pa. 630, 539 A.2d 810. The trial court's charge in the present case invited the jury to do just that. In effect, the charge the trial court gave to the jury in the present case told them that, based on the evidence as they perceived it to be, they could find malice or specific intent to kill—thereby rejecting evidence of heat of passion or unreasonable belief—yet still find Hernandez guilty of only voluntary manslaughter. We find such a result violative of the philosophy underlying *Commonwealth v. Carter, supra,* and its progeny.

█ The verdict rendered in the present case readily reveals the confusion caused by the mercy charge. As stated above, although the trial court gave the mercy charge and later explained to the jury how they were to complete the verdict sheet, the trial court failed to instruct the jury how, if they decided to dispense mercy, the completion of the verdict sheet would be affected. We cannot condone the trial court's interpreting this jury's incomplete

findings to arrive at a "constructive verdict." We find the federal caselaw cited by the Commonwealth to be distinguishable to the facts of the present case, because, unlike the situation in those cases, the trial court in the present case specifically instructed the jury that its mercy-dispensing function could influence their finding of guilt. Thus, the "with mercy" language must be regarded as an integral part of the jury's finding and not mere surplusage. The difficulty lies with the fact that the jury did not clearly state how they used their mercy-dispensing function. Upon receiving such a verdict, the trial court should have sent the jury back to deliberate after further instruction, asking them to clarify their verdict. By answering the charge of first degree murder with "guilty with mercy," and leaving the verdict on the third degree murder and voluntary manslaughter unanswered, the jury left to speculation the true intent of their verdict. This the jury cannot do. While we cannot accept the "constructive verdict" of third degree murder imposed by the trial court, we cannot likewise grant the relief requested by Hernandez and direct that he be sentenced to voluntary manslaughter. Thus, we are constrained to vacate the judgment of sentence and remand for a new trial.

Judgment of sentence is vacated and the matter is remanded for new trial. Jurisdiction relinquished.