617 A.2d 1263

COMMONWEALTH of Pennsylvania, Appellee,

v.

James H. CARPENTER, Appellant.

Supreme Court of Pennsylvania.

Argued May 5, 1992.

Decided Nov. 19, 1992.

Steven G. Zorbaugh, York, for appellant.

H. Stanley Rebert, Dist. Atty., John W. Thompson, Jr., York, Gerald A. Lord, Dep. Prosecutor, for appellee.

44

OPINION OF THE COURT

PAPADAKOS, Justice.*

This is the appeal of James H. Carpenter (Appellant) from the Order of the Court of Common Pleas of York County denying Appellant relief under the Post Conviction Relief Act (PCRA).[1] Jurisdiction over this direct appeal exists pursuant to 42 Pa.C.S. § 9546(d) which provides that a final court order under the PCRA "in which the death penalty has been imposed shall be directly appealable only to the Supreme Court pursuant to its rules."

Appellant was convicted by a jury on January 20, 1984, of the stabbing death of Jimmy Lee Taylor. The jury found Appellant guilty of murder of the first degree and following a sentencing hearing, determined that an aggravating circumstance existed (namely, that Appellant had a significant history of felony convictions involving the use or threat of violence to the person, 42 Pa.C.S. § 9711(d)(9)) which outweighed any mitigating circumstances. The jury fixed the penalty at death and a direct appeal followed to this Court. Following our mandatory review of such matters, we affirmed the conviction and judgment of the sentence of death, *Commonwealth v. Carpenter*, 511 Pa. 429, 515 A.2d 531 (1986), and remanded the matter to the Court of Common of York County for the appointment of new counsel so that counsel could argue various ineffective assistance of counsel claims that Appellant had raised in a *pro se* petition filed with this Court.

The Honorable James E. Buckingham, a Senior Judge of the Court of Common Pleas of York County, appointed new counsel and held a hearing on the thirteen allegations of trial counsel ineffectiveness. All of these allegations were deter-

---

* Reassigned to this writer.

1. Act of April 13, 1988, P.L. 336, No. 47, § 3 et seq., immediately effective, 42 Pa.C.S. § 9541 et seq.

mined to be meritless and relief under the PCRA was denied, prompting this direct appeal.

Appellant renews twelve of his allegations of trial counsel ineffectiveness, which can be grouped into various categories. Three issues concern counsel's failure to object to certain testimony elicited from witnesses or venirepersons; two issues concern counsel's failure to object to the prosecutor's comments; four issues challenge counsel's failure to object to the jury charge at the guilt phase or penalty phase; one issue concerns counsel's failure to argue mitigating factors to the jury; one issue challenges counsel's actions at the penalty phase in response to a question from the jury; and the last issue deals generally with the sufficiency of counsel's actions in preparing Appellant for trial.

It is axiomatic that in order for Appellant to establish a claim of ineffective assistance of counsel, he must first demonstrate that the underlying claim is of arguable merit; that counsel's action or inaction was not grounded on any reasonable basis designed to effectuate his interest; and that the commission or omission so undermined the trial that the verdict is unreliable. It is with these principles in mind that we review Appellant's various allegations of trial counsel ineffectiveness.

### ISSUES CONCERNING THE FAILURE TO OBJECT TO TESTIMONY BY WITNESSES AND VENIREPERSONS

The first claim that falls in this category of error revolves around counsel's failure to object to a witness's disclosure of his occupation as a parole officer. Appellant argues that this reference permitted the jury to infer that Appellant had a prior criminal record, which was prejudicial *per se* to his cause. This same issue was raised in the direct appeal to us, where we reviewed the record and the context in which the statement was made and thereafter concluded that "little, if any, prejudice accrued to appellant by this witness passing reference to his occupation as a parole officer." *Com-*

*monwealth v. Carpenter,* 511 Pa. at 437, 515 A.2d at 534–535. Our conclusion that the disclosure was not prejudicial necessarily precludes a determination now that counsel was ineffective for failing to object because Appellant cannot relitigate our finding that the omission was not prejudicial to him and without such a finding he cannot establish counsel's ineffectiveness.

Next, Appellant claims that trial counsel was ineffective when he did not object to the prosecutor asking Helen Emmil whether she had a criminal record. Appellant's defense was based on the theory that Ms. Emmil committed the murder and, on cross-examination, trial counsel attempted to show that Ms. Emmil had a violent disposition by asking her whether: (1) she ever told the Appellant that if he fooled around with another woman or brought her into her house, she would kill her, and (2) whether she ever kept a knife because of her fear of the victim.

This line of questioning prompted the prosecutor to ask the witness on re-direct examination whether she had a prior criminal record in an attempt to demonstrate that she had no prior history of violence. Such a line of questioning falls within the recognized rule that re-direct examination is limited to answering only such matters as were drawn out in the immediately preceding examination. *Catina v. Maree,* 498 Pa. 443, 447 A.2d 228 (1982). Moreover, when a party raises an issue on cross-examination, it will be no abuse of discretion for the court to permit re-direct on that issue in order to dispel any unfair inferences. *Commonwealth v. Dreibelbis,* 493 Pa. 466, 426 A.2d 1111 (1981); *Commonwealth v. Lewis,* 472 Pa. 235, 372 A.2d 399 (1977). Since the defense raised a question concerning the witness's violent nature, the prosecution had a right to dispel any unfair inferences arising from this issue by allowing the witness to answer the charge by showing that she did not have a criminal record. There would have been no merit in objecting to this line of questioning and counsel cannot be found to be ineffective for not pursuing such a tactic.

Appellant also argues that trial counsel was ineffective in failing to question four prospective jurors concerning their attitude on the death penalty. Appellant claims that these four jurors were only asked whether they objected to the death penalty, not whether they could follow the law regarding the imposition of such a penalty, and Appellant raises the possibility that these four prospective jurors might have been so prone to impose the death penalty that an unfair and biased jury was impaneled. Aside from the speculative nature of such a claim, Appellant has misread the record and the law concerning the purpose of voir dire questioning.

We have made clear, that the purpose of voir dire questioning is to empanel a fair and impartial jury which will apply the law in accordance with the instructions of the trial court. *Commonwealth v. Jermyn*, 516 Pa. 460, 533 A.2d 74 (1987). Contrary to Appellant's allegation, the PCRA court found that in addition to being asked the general question of whether they objected to the death penalty, each of these prospective jurors indicated on the record that they were willing to follow the court's instructions and impose a penalty of death in the appropriate case. These veniremen satisfied the purpose of voir dire questioning and qualified themselves as fair and impartial jurors. *Commonwealth v. Rolan*, 520 Pa. 1, 549 A.2d 553 (1988). Under such circumstances, trial counsel's tactical decision not to ask further questions was not a dereliction of duty but must be viewed as having a reasonable basis and, therefore, Appellant's ineffective assistance of counsel claim must fail.

## FAILURE TO OBJECT TO COMMENTS MADE BY THE PROSECUTOR

Appellant points to the following two instances where he believes that trial counsel was derelict in his duties: (1) for not objecting when the prosecutor referred to the results of a lie detector test given to Ms. Emmil; and (2) when the prosecutor indicated during his closing argument that an agreement existed between the prosecutor and trial counsel

48

that whoever killed the victim was guilty of murder of the first degree.

Concerning the first allegation, the PCRA court indicated that Appellant first brought up the question of Ms. Emmil taking a lie detector test when he testified that Ms. Emmil told him that the police were going to give her such a test and he told her not to worry since lie detector tests were not accurate. N.T., Volume III, p. 80. Under such circumstances, it would not be error to permit cross-examination on this subject since this covered a subject testified to on direct examination. *Commonwealth v. Snoke,* 525 Pa. 295, 580 A.2d 295 (1990); *Commonwealth v. Green,* 525 Pa. 424, 581 A.2d 544 (1990). The right of cross-examination has always extended to matters testified to on direct examination and, if Appellant has a complaint that the jury heard that Ms. Emmil took and passed a lie detector test, it cannot be with trial counsel for he has only himself to blame for his revelation of this fact to the jury.

As to the other alleged instance of ineffectiveness, Appellant claims that trial counsel should have objected when the prosecutor told the jury that he and trial counsel agreed that whoever killed the victim was guilty of murder of the first degree. The actual statement made by the prosecutor was "... between Mr. Flinchbaugh and myself, there is not much to debate. Whoever killed Jimmie Lee Taylor is guilty of murder in the first degree." N.T. Volume IV, p. 20. Appellant argues that this statement can be read to indicate that the prosecutor was telling the jury that trial counsel was conceding that the stabbing was a first degree murder. It appears that trial counsel approached the bench at the conclusion of the closing and objected at sidebar to the statement that he had any agreement that the death of the victim was a first degree murder, but trial counsel never made this a formal objection and herein lies Appellant's complaint.

It is true that the statement, taken out of context, can be read to mean that neither attorney was questioning that the killing was a murder of the first degree. But the state-

ment can also be read, out of context, to mean that the degree of murder was the only thing left to debate between the parties. This is why remarks made by a prosecutor must be evaluated in the context in which they occur. *Commonwealth v. Smith*, 490 Pa. 380, 416 A.2d 986 (1980).

This statement was made as part of the Commonwealth's closing to the jury and was made in response to trial counsel's argument that Ms. Emmil, rather than Appellant, was the one who stabbed the victim. In fact, in our direct review of this case, we already reviewed this closing statement and commented that the closing was a fair commentary on the evidence. "Given the evidence that was presented to the jury which proved that only one of two people could have stabbed the victim (appellant or his girlfriend, Ms. Emmil) the prosecutor's comments were neither unfair nor *unduly* prejudicial, and merely highlighted what the jury knew already—that one of these two was the murderer and one of these two lied." *Commonwealth v. Carpenter*, 511 Pa. at 440, 515 A.2d at 536.

The comment now complained of is the culmination of the prosecutor's closing and must be read as the prosecutor's summation where he asks the jury to draw a permissible inference from all the evidence, i.e., that one of these two witnesses was the murderer and that the murder is one of first degree. Such an argument simply has nothing to do with any agreements with opposing counsel and it is a misreading of the closing to suggest that one existed or that the purpose of the statement was to put such an idea in the mind of the jury. Accordingly, there was no error in failing to object formally to the prosecutor's statement.

### FAILURE TO OBJECT TO PORTIONS OF THE CHARGE TO THE JURY DURING THE GUILT PHASE AND PENALTY PHASE

Here, Appellant first argues that trial counsel was ineffective in failing to object so that the trial court could charge the jury that if the jury found that the murder took place during the commission of a felony it could find that the killing was murder of the second degree. This argument is

50

totally without merit. There is no duty on a trial judge to charge a jury upon law which has no applicability to the facts as presented to the jury. There must be some relationship between the law upon which an instruction is required and the evidence presented at trial. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 72–73, 454 A.2d 937, 967 (1982); *Commonwealth v. Frey*, 504 Pa. 428, 450 n. 10, 475 A.2d 700, 711 n. 10 (1984). (*See also, Commonwealth v. Toledo*, 365 Pa.Superior Ct. 224, 529 A.2d 480 (1987), for a discussion concerning the inappropriateness of charging on law without regard to the evidence adduced at trial.) The lower court correctly noted that no evidence was presented to show that the murder took place during the commission of a felony. An objection to the charge would have had no merit and there can be no finding of ineffectiveness.

 Similarly, Appellant charges trial counsel with ineffectiveness for failing to object to the trial court's charge on murder of the third degree because it did not indicate that voluntary intoxication or drugged condition could reduce the degree of murder to murder of the third degree, since there was some evidence to indicate that Appellant had consumed alcohol and marijuana prior to the victim's death. For a charge to have been given on intoxication, the evidence would have to show that the Appellant was overwhelmed or overpowered by alcohol to the point of losing his faculties so as to be incapable of forming a specific intent to kill. *Commonwealth v. Breakiron*, 524 Pa. 282, 571 A.2d 1035 (1990); *Commonwealth v. Reiff*, 489 Pa. 12, 413 A.2d 672 (1980); *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1975).

No such evidence exists in this record and, in fact, Appellant himself testified on more than one occasion that he was not drunk and that he was aware of everything that took place. Since the evidence does not support a finding of intoxication, the trial court was not required to charge on this issue and trial counsel was not ineffective for failing to request such a charge.

Appellant, relying on his misreading of the record as supportive of a finding of intoxication on his part, also argues that counsel was ineffective for failing to ask the trial court to charge the jury at the penalty phase to consider his intoxication or drug use as a mitigating factor. Again we must conclude that the evidence was not sufficient to warrant such a charge since Appellant himself testified that he was not drunk and that he was aware of everything that took place on the night of the murder. A request for a charge on this point would have been meritless and counsel cannot be found ineffective for failing to pursue a meritless claim.

Finally, Appellant argues that trial counsel was ineffective for failing to object to the trial court's instruction to the jury concerning the requirements which must be present for the jury to find as a mitigating circumstance that the defendant acted under extreme duress. Appellant argues that the trial court deviated from the statutory language in that it failed to explain that the duress need not be such duress as to constitute a defense to a duress prosecution under 18 Pa.C.S. § 309. Appellant claims that our decision in *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984), *cert. denied*, 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984), supports his argument, but a closer examination of that decision refutes his claim. Frey, like Appellant, did not use duress as a defense and then attempted to take advantage of the trial court's charge that did not exactly mirror the Sentencing Code by arguing that the charge was defective and required that the sentence of death be vacated.

We rejected this claim and noted that since duress was not a defense proposed by the defendant, it was irrelevant that the trial court did not charge pursuant to the exact language of the statute. *Commonwealth v. Frey*, 504 at 441–442, 475 A.2d at 707. Only where the defective charge can be shown to inject "passion, prejudice or some other arbitrary factor" into the deliberative process will grounds exist for us to vacate a sentence of death. *Frey*, at 437, 475 A.2d at 704. Appellant did not argue that extreme duress caused him to

murder the victim, rather he argued his innocence and pointed a finger at Ms. Emmil as the killer. Thus, while the charge may have been less than perfect, it was irrelevant and Appellant cannot show how the charge so infected the deliberative process as to render the verdict of death constitutionally impermissible. That being the case, a request to correct the charge would have been superfluous and counsel was not ineffective for failing to pursue this issue.

### FAILURE OF TRIAL COUNSEL TO ARGUE MITIGATING CIRCUMSTANCES TO THE JURY AT THE PENALTY PHASE

Appellant claims that trial counsel was ineffective for not presenting sufficient evidence as to his character and background as a mitigating circumstance. There was evidence put on record concerning Appellant's excellent record while in the State Correctional Institution from November 30, 1976, to December 23, 1982, and his excellent record, fine work record and good conduct in York from December 23, 1982 up to the date of the killing. Apparently, Appellant is complaining that trial counsel did not provide witnesses to substantiate his good prison and work record. Unfortunately, Appellant never gave counsel the names of any people who could testify as to his character, nor does he explain how these witnesses would have been beneficial to him. Since counsel was unaware of these witnesses, he cannot be deemed ineffective for failing to call them to testify. *Commonwealth v. Jasper*, 526 Pa. 497, 587 A.2d 705 (1991); *Commonwealth v. Anderson*, 501 Pa. 275, 461 A.2d 208 (1983).

### FAILURE TO OBJECT TO TRIAL COURT'S RESPONSE TO QUESTION BY JURY CONCERNING LIFE IMPRISONMENT

During the jury's deliberation at the penalty phase, a question arose whether the jury could recommend a sentence of life with a guarantee of no parole. The trial court's response was "... no, absolutely not." N.T., Volume V, p. 45. Appellant argues that trial counsel was ineffective in not

objecting to this answer, because the trial court's explanation mislead the jury into believing that if they handed down a life sentence there would be a possibility of parole. Appellant claims that this erroneous charge focused the jury's deliberations away from weighing the aggravating and mitigating circumstances and introduced an arbitrary factor into the deliberative processes. Again, in his zealousness to manufacture an error, Appellant has taken a phrase out of context and read into it his own meaning.

The explanation of the trial judge to the jury's question was as follows:

The answer is that simply, no absolutely not. Moreover, ladies and gentlemen, you talk about recommendation. I don't know exactly what you mean, but I assume you remember what I told you before, that you as a jury at this point are not making a recommendation of death or life imprisonment. I hope you understand that.

You folks are actually fixing the sentence, and not the Court. It is not the recommendation. Whether you mark on there death, that's the sentence and there is nothing this Court can do about it. The Court has nothing to do on it. If you mark life imprisonment, there is nothing this Court can do about it or wants to do about it, because that decision is entirely up to you as members of the jury. So, I hope you understand that it is not a recommendation, it is a sentence that will bind all of us here to whatever you fix and it's going to have to be very simply death or life imprisonment. And the question of parole is absolutely irrelevant. I hope you understand that."

As can be seen, the trial court was concerned that the jury may have misunderstood that they were setting the sentence and not making a recommendation. We think he adequately explained that the jury sets the sentence and whatever it may be will be carried out without interference from any other source. To underscore this, he repeated that the court would not tamper with their verdict and that the question of parole is irrelevant. Read in context, we find nothing improper with

54

this explanation and reject Appellant's tortured reading of three words.

## FAILURE TO PREPARE DEFENDANT FOR TRIAL

Finally, Appellant argues that trial counsel was ineffective in failing to prepare him adequately for trial. The chief complaint is that if trial counsel had spent enough time with Appellant, he would not have made various damaging admissions and statements when he testified. The PCRA court rejected this claim, noting that Appellant was very familiar with the criminal justice system and there was extensive preparation of Appellant for this trial. Under such circumstances, we agree that counsel cannot be blamed for Appellant's voluntary decision to expand his prepared testimony and make damaging remarks.

Accordingly, all of Appellant's claims of ineffective assistance of counsel are baseless and the order of the trial court denying PCRA relief is affirmed.[2]

LARSEN, J., did not participate in the consideration or decision of this case.

McDERMOTT, J., did not participate in the decision of this case.

---

**2.** The Prothonotary of the Supreme Court is directed to transmit a copy of this opinion to the Governor to facilitate him in his review of the record and transcript of the trial, sentencing and direct appeal of this matter which was previously transmitted to him in *Commonwealth v. Carpenter*, 511 Pa. 429, 515 A.2d 531 (1986); 42 Pa.C.S. § 9711(i).