654 A.2d 1120

COMMONWEALTH of Pennsylvania

v.

James MOODY, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 26, 1994.

Filed Feb. 13, 1995.

564

566

Steven A. Morley, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before OLSZEWSKI, JOHNSON and BROSKY, JJ.

OLSZEWSKI, Judge.

On July 9, 1985, Frank Jose Brown was shot and killed in his home in West Philadelphia. Shortly thereafter, Oliver Macklin and appellant James Moody were arrested and charged with the crime. At trial, David Sheppard and Manny Grant testified that they were in the house with Brown when they saw the two defendants enter. They further testified that Moody had a gun, and that they heard, but did not see, a scuffle and a shot. Another witness, Hezekiah Simmons, was outside and testified that he heard two shots and then saw two men running from the house. Housing Police Officer Roy Boykins testified that he subsequently saw Moody and another man running away from the area.

Moody and Macklin were jointly tried in April 1986. A jury found both men guilty of second-degree murder and conspiracy. After being sentenced to life imprisonment on the murder charge and five-to-ten years imprisonment on the conspiracy charge, appellant filed a direct appeal to this Court. We affirmed the judgment of sentence, *Commonwealth v. Moody*, 381 Pa.Super. 658, 548 A.2d 641 (1988) (memorandum decision), and the Pennsylvania Supreme Court denied allowance of appeal. *Commonwealth v. Moody*, 521 Pa. 611, 557 A.2d 343 (1989).

On February 1, 1990, appellant filed a Post Conviction Relief Act (PCRA) petition. 42 Pa.C.S.A. § 9541 *et seq.* The Honorable Joseph I. Papalini denied PCRA relief on October, 5, 1993. This appeal followed.

■ Appellant's claim on this PCRA appeal is one of ineffective assistance of counsel. In order to make out such a claim on a PCRA appeal, petitioner must show that "the underlying claim is of arguable merit; that counsel's action or

inaction was not grounded on any reasonable basis designed to effectuate his interest; and that the commission or omission so undermined the trial that the verdict is unreliable." *Commonwealth v. Szuchon*, 534 Pa. 483, 486, 633 A.2d 1098, 1099 (1993). Therefore, our initial inquiry is whether appellant's underlying claim is of arguable merit.

All of appellant's ineffective assistance of counsel claims revolve around the prosecutor's closing statement. Appellant has highlighted eight passages that he finds improper and asserts that trial counsel was ineffective for failing to object at trial, and appellate counsel was ineffective for failing to raise the issue on direct appeal.

 In determining whether a prosecutor's statement was proper, we view it not in isolation, but rather in the context in which it was made. *Commonwealth v. Carpenter*, 533 Pa. 40, 47, 617 A.2d 1263, 1267 (1992). A prosecutor is generally given a reasonable latitude in presenting his or her version of the case to the jury. *Commonwealth v. Bullock*, 384 Pa.Super. 269, 277, 558 A.2d 535, 539 (1989), *appeal denied*, 525 Pa. 594, 575 A.2d 561 (1990). Any remarks that are supported by the evidence or legitimate inferences therefrom are proper. *Commonwealth v. Hardcastle*, 519 Pa. 236, 252–56, 546 A.2d 1101, 1109–10 (1988), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990); *Commonwealth v. Lark*, 518 Pa. 290, 310, 543 A.2d 491, 501 (1988). A statement may also be proper if it fairly rebuts arguments made by the defense during summation, even if it deals with matters of credibility. *Commonwealth v. Johnson*, 527 Pa. 118, 126, 588 A.2d 1303, 1307 (1991); *Commonwealth v. Barren*, 501 Pa. 493, 497, 462 A.2d 233, 235 (1983).

 The first challenged statement in this case reads: There is myself as well as the Philadelphia Police Department and my civilian witnesses who have been accused of everything. We've manipulated you, we've tricked you, and we've created an aura ... I say to you that all I have done as an attorney ... all I have done is present the witnesses that were available to me and that is all we have done.

N.T. 4/24/86 at 106–107. Appellant argues that this statement improperly vouches for the completeness of the trial record and injects the prosecutor into the case. We disagree. This statement was made after both defense counsels argued at length that the Commonwealth manipulated the witnesses and tricked the jury. *Id.* at 54–100. In light of defense counsels' accusations, this statement was a fair response by the prosecution to charges that it was not playing fairly. *See Commonwealth v. Maxwell,* 505 Pa. 152, 164–68, 477 A.2d 1309, 1316–17 (1984), *cert. denied,* 469 U.S. 971, 105 S.Ct. 370, 83 L.Ed.2d 306 (1984) (finding that prosecutor's statement that the defense was "blowing smoke" was proper in response to personal attacks made by defense counsel during closing remarks).

■ Appellant next challenges the following statement: "I put on Officer Wilkens so that you would have all of the evidence that was available to the police." Conveniently, however, appellant fails to quote this statement in context. During closing arguments, defense counsel accused the prosecutor of putting on Officer Wilkens' testimony to evoke sympathy for the victim. N.T. 4/24/86 at 56. In rebutting this accusation, the prosecutor repeated the allegation and then said, "I submit to you that is not worthy of belief. That is not why I put that on. *I put Officer Wilkens on so that you would have all of the evidence that was available to me that was available to the police."* *Id.* at 110–111 (emphasis added). Thus, when viewed in context, it is clear that the prosecutor was merely responding to defense counsel's attack regarding his motivation for putting on the witness. As with the first statement, we find that this statement was a fair response to defense counsel's closing arguments. *Maxwell,* 505 Pa. at 164–68, 477 A.2d at 1316–17.

■ The next challenged statement reads, "I don't think that is humanly possible. I don't think anyone can manipulate Manny Grant." Appellant asserts that this is improper vouching. As with the statement above, however, appellant does not place the quote in context. During closing statements, defense counsel repeatedly and severely attacked the credibili-

ty of Commonwealth witness Manny Grant. N.T. 4/24/86 at 59–75. In referring to Grant, counsel said:

[H]e is pathetic, but in a way that's very different from the way in which the district attorney would like you to believe he is. The degree to which that witness has been manipulated is pathetic.... Why would anyone lie to that extent? You know, the lies are almost obscene. Could there be a reason why this man would lie so much, so frequently, so often? You know it's possible that Manny Grant is a poor man's cut rate, low level snitch.... Just point Manny in the right direction, the direction you want Manny to go in, and that's the direction Manny will go in.

*Id.* at 70–71. In response to this attack, the prosecutor stated, "I have been accused of manipulating Manny Grant. You listened to Manny Grant. *I don't think that is humanly possible. I don't think anyone can manipulate Manny Grant.*" *Id.* at 110–111 (emphasis added). The prosecutor is not vouching for the credibility of Grant, he is simply defending against the assertion that the Commonwealth manipulated Grant in order to get the testimony that it wanted. In this context, this prosecution statement is a fair response to the defense. *See Barren,* 501 Pa. at 498–99, 462 A.2d at 235 (finding that a prosecutor's statement that the victim testified to "bring to you the truth" was a fair response to defense assertions that the victim testified from "rote memorization" brought about by extensive preparation).

Appellant's next claim stems from the following statement, "He [David Sheppard] gave us a statement. He told us that he was in the house with Manny." N.T. 4/24/86 at 115. On April 22, 1986, David Sheppard testified that he did in fact give the police a statement and that he told police that he was in the house with Manny Grant. N.T. 4/22/86 at 155–160. Therefore, this statement is supported by the evidence and is totally proper. *Hardcastle,* 519 Pa. at 252–56, 546 A.2d at 1109–10; *Lark,* 518 Pa. at 310, 543 A.2d at 501.

■ Appellant also offers the following statement as improper, "Gus Richardson is a pretty good judge of character."

N.T. 4/24/86 at 116–117. When quoted out of context, this statement might appear to improperly vouch for the credibility of a Commonwealth witness. Once again, however, the context shows otherwise. The prosecutor, referring to Richardson, stated:

> He said he talked to Manny the first night and didn't want to press him. "Look at these photos. Recognize anybody? No." Let's him go. He's emotional. He is going to let him relax. He'll come back to me. He was right. Manny came back to him. Gus didn't go looking for Manny. Manny came back on his own. *Gus Richardson is a pretty good judge of character.* Manny comes back. Out of the entire world of photographs who does Manny Grant pick out? He picks out those two men, the same men that David Sheppard picks out.

*Id.* (emphasis added). This statement is discussing Grant's voluntary identification of the defendants. The mention of Richardson being a good judge of character is only referring to Richardson's prediction that Grant would come back to him with information. Since the record supports the fact that Grant did come back as Richardson predicted, the assertion that Richardson is good at predicting when someone will return is a reasonable inference from record evidence. Therefore, this statement, viewed in context, is not improper. *Hardcastle*, 519 Pa. at 252–56, 546 A.2d at 1109–10; *Lark*, 518 Pa. at 310, 543 A.2d at 501.

■ The sixth statement that appellant challenges reads, "That the guy [Simmons] I brought down that I told you I would go see the judge about if he testified in the homicide trial, that I got his bail reduced so he could get out because he was afraid." N.T. 4/24/86 at 119. Appellant asserts that the prosecutor was improperly vouching for the credibility of Simmons. This argument fails because the entire statement is supported by evidence of record. When Simmons testified, he was questioned about his deal with the Commonwealth and he specifically commented on the prosecutor's actions in getting him out of jail. N.T. 4/23/86 at 106–108. Simmons also specifically stated that he wanted to get out of jail because he

was afraid of being hurt. *Id.* Therefore, this was merely a comment on record evidence and was totally proper. *Hard-castle,* 519 Pa. at 252–56, 546 A.2d at 1109–10; *Lark,* 518 Pa. at 310, 543 A.2d at 501.

■■■■■ Appellant also challenges the following statement: "I wouldn't ask you to convict either of these men based on the testimony alone of any one of these witnesses." N.T. 4/24/86 at 124. Appellant asserts that this was a statement of the prosecutor's belief that the evidence in this case was sufficient to convict the defendants. As he has done before, appellant takes this quote out of context. The entire passage reads:

> I submit to you that everyone of these witnesses is a piece and they you will support one another in little ways. *I wouldn't ask you to convict either of these men based on the testimony alone of any one of these witnesses.* You have to consider everything in total and that when you do consider everything in total you will have a very clear picture of what happened that night.

*Id.* (emphasis added). A prosecutor is as entitled as a defense attorney to argue his version of the case based on the record evidence. *E.g., Bullock,* 384 Pa.Super. at 277, 558 A.2d at 539. This passage, premised by the phrase "I submit," was such an argument. The prosecutor was merely exhorting the jury to consider all of the record evidence before reaching a verdict and asserting that the evidence would support a verdict in favor of the Commonwealth. Such a statement is proper. *Commonwealth v. Williams,* 532 Pa. 265, 276, 615 A.2d 716, 722 (1992) (holding that a prosecutor's statement that "there is no doubt I think from this evidence that indeed his intention was to shoot at or kill Erica," was proper because he related his suggested conclusion back to the evidence).

■■■■ Lastly, appellant challenges the following statement: You people that are from neighborhoods like 43rd and Fairmount, you all bring a little something different to this jury box. Use those tools when you go out. You people that have street smarts, that have some from independent

neighborhoods, you people that know what courage it takes to come forward, not just come to the police and say 'yeah, I know who did it' but the courage to sit up there on the witness stand and testify under oath against people in a homicide trial and then have to go back out to that neighborhood to continue to live your life. When you think on that jury box, you people understand that fear, explain it, to all the others here, because that's the element that's operating with both of them, with Manny Grant and with David Sheppard.

N.T. 4/24/86 at 117–118. Appellant claims that this statement improperly invited the jury to base their decision on fear and prejudice rather than the evidence. In this case, defense counsel vigorously challenged the credibility of key Commonwealth witnesses who had initially refused to speak to the police. Thus, we believe that this passage, which attempted to explain the initial hesitancy by referring to the element of fear, was a fair response to the defense's attack on credibility. *See Commonwealth v. Woods,* 275 Pa.Super. 392, 405, 418 A.2d 1346, 1353 (1980) *(en banc ), appeal dismissed,* 498 Pa. 140, 445 A.2d 106 (1982) (stating that it was not error to tell jurors that they could utilize their life experiences in determining the credibility of a witness).

■■■ Even assuming that this statement was an improper appeal to the prejudices or fears of the jury, and that defense counsel had no reasonable justification for failing to object, appellant would still fail to make out a claim of ineffective assistance of counsel. On a PCRA appeal, appellant must show that counsel's inaction so undermined the trial that the verdict is unreliable. *E.g., Szuchon,* 534 Pa. at 486, 633 A.2d at 1099. We do not believe that this error would prejudice a jury to that extent.

■■■ In *Commonwealth v. Toledo,* this Court addressed a similar statement made in a prosecutor's closing argument. 365 Pa.Super. 224, 235, 529 A.2d 480, 486 (1987), *appeal denied,* 517 Pa. 622, 538 A.2d 876 (1988). The prosecutor asserted that the jury should be conscious of the amount of

crime in the community, applaud the eyewitness for coming forward, and return a guilty verdict to take back the streets. *Id.* We found that this was not a reversible error in light of defense credibility attacks, the prosecutor's statement as a whole, and the weight of the Commonwealth's evidence. *Id.* Thus, even if this appeal to fear was error, it was insufficient to "so permeate the trial with bias and hostility toward the appellant that the jurors could not render a true verdict according to the evidence." *Id.*

Similarly, even if the statement in this case improperly appealed to the fears and prejudices of the jury, it did not so undermine the trial as to call into question the reliability of the verdict. The statement was clearly a response to the defense attacks on the credibility of the Commonwealth's witnesses. Moreover, this was only one portion of a lengthy closing statement in which the prosecutor properly argued his case based on the record evidence. Additionally, in light of the Commonwealth's weighty evidence, it is unreasonable to assume that this statement was the basis for the verdict.

In sum, appellant has failed to make out a valid PCRA claim of ineffective assistance of counsel. Regarding the first seven alleged improper statements, we find them to be proper. Thus, counsel cannot be ineffective for failing to object. *Johnson*, 527 Pa. at 126, 588 A.2d at 1307. As to the eighth statement, even if it was improper, it did not undermine the reliability of the verdict. *Toledo*, 365 Pa.Super. at 235, 529 A.2d at 486.

Affirmed.

JOHNSON, J., concurs in the result.