J-A27026-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| V.E.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| D.R.M. | : | |
| | : | |
| Appellant | : | No. 1338 EDA 2025 |

Appeal from the Order Entered April 24, 2025
In the Court of Common Pleas of Northampton County Civil Division at
No(s): C-48-CV-2024-03437

BEFORE: BOWES, J., MURRAY, J., and BECK, J.

MEMORANDUM BY MURRAY, J.: **FILED DECEMBER 16, 2025**

In this child custody action, D.R.M. (Father) appeals, *pro se*, from the order entered following a custody trial, awarding V.E.M. (Mother) sole legal custody, and primary physical custody, of the parties' minor children, L. (a son born in April 2015) and S. (a son born in September 2020) (collectively, "the Children"), subject to Father's periods of supervised partial physical custody. Father argues the trial court erred and violated his due process rights, and principles of fundamental fairness, where it precluded him, a *pro se* litigant, from introducing into evidence Father's proffered documentary evidence as a sanction for his failure to comply with an order requiring pretrial disclosure of witnesses and exhibits. After careful review, we affirm.

Father and Mother married in April 2013, and the Children were born during the marriage. The parties previously resided together until their

separation in 2021. The parties divorced in 2022. Father currently resides in Harper's Ferry, West Virginia. Mother resides with the Children in Northampton County, Pennsylvania, approximately 150 miles from Father's residence.

On April 18, 2024, Mother filed a *pro se* Petition for Emergency Relief-Custody in Northampton County. Mother explained the parties had an existing child custody order from the State of New York (prior custody order). Petition for Emergency Relief-Custody, 4/18/24, ¶ 5B. Under the prior custody order, Father had shared legal custody and partial physical custody of the Children every other weekend, as well as for five weeks during the summer. ***See*** Consent Order of Custody (Suffolk County, New York), 8/17/23, at 2, 6 (admitted at Father's instant custody trial as Plaintiff's Exhibit 1). In her petition, Mother alleged Father had sent the Children text messages containing inappropriate content (discussed *infra*), and questioned whether he suffered from a mental illness. Petition for Emergency Relief-Custody, 4/18/24, ¶ 6. Mother sought a "custody determination suspending communications unless supervised & suspending unsupervised visits until a forensic psychological evaluation is completed." ***Id.*** On the same date, the trial court entered an interim custody order temporarily awarding Mother sole legal and physical custody of the Children for a period of 90 days, or until further order of court. Order, 4/18/24, at 2.

On June 12, 2024, Father filed a counseled petition for modification of custody.[1] Father claimed he "has not seen the Children since April 7, 2024," and asserted he "believes it is in the best interest of the Children that the current Order be modified to allow Father partial physical custody on [the] 1st, 2nd and 4th weekend of every month." Petition for Modification of Custody, 6/12/24, ¶¶ 5a, 6 (some capitalization modified).

On August 22, 2024, Mother filed an Answer and Counterclaim to Father's petition for modification. On the same date, the trial court entered an interim custody order, awarding Mother sole legal custody and primary physical custody, subject to Father's periods of partial supervised physical custody. Interim Order, 8/22/24, ¶¶ 1-3; *see also id.* ¶ 4 (permitting Father biweekly telephone contact with the Children).

On October 15, 2024, Father, acting *pro se*, filed another petition for modification of custody. According to Father,

> [Mother] refused to allow [Father] visitation with [the Children] in the month of September and will only allow [Father] to speak to them on [Mother's] designated times and dates. [Mother] is currently under [Child Protective Services (CPS)] investigation.

---

[1] Under the Child Custody Act, 23 Pa.C.S.A. §§ 5301, *et seq.* (the Act), "[u]pon petition, a court may modify a custody order to serve the best interest of the child." *Id.* § 5338(a); *see also K.D. v. E.D.*, 267 A.3d 1215, 1224 (Pa. Super. 2021) ("[C]ustody matters are a special creature. Unlike other actions which have a clear beginning, middle, and end, custody orders may be repeatedly modified." (citation and ellipses omitted)). A party requesting modification of custody has the burden to show that modification is in the child's best interest. *J.M.R. v. J.M.*, 1 A.3d 902, 911 (Pa. Super. 2010).

Petition for Modification of Custody, 10/15/24. Mother filed an answer and counterclaim. The matter was scheduled for a custody conciliation conference on January 16, 2025, before Custody Master Briana Gaumer, Esquire (Master Gaumer). *See* Praecipe for Custody Master Conference, 11/27/24.

On January 17, 2025, the trial court entered an order "by agreement of the parties at a conference before [] Master … Gaumer[.]" Order, 1/17/25.[2] The order scheduled a custody trial for April 21, 2025. *Id.* ¶ 1. Significantly, the order contained the following provision:

> **Pretrial Exchanges.** The parties shall exchange expert reports and lists of exhibits and witnesses on or before ten (10) days before [t]rial. *All exhibits shall be pre-marked at the time of exhibit exchange and trial.*

*Id.* ¶ 3 (emphasis in original).[3] However, **while Mother complied with the pretrial exchange provision, Father did not.** *See* N.T. (custody trial), 4/21/25, at 17-18; *see also id.* at 15.

---

[2] The trial court docket bears a notation that the prothonotary sent copies of the January 17, 2025, order "to counsel and/or parties of record pursuant to [Pa.R.C.P.] 236." Docket, Entry 24 (capitalization modified); *see also* Pa.R.C.P. 236(a)(2) ("The prothonotary shall immediately give written notice of the entry of … any [] order … to each party's attorney of record or, if unrepresented, to each party. The notice shall include a copy of the order[.]"); Pa.R.C.P. 236(b) ("The prothonotary shall note in the docket the giving of the notice[."]). Where, as here, the prothonotary complies with Rule 236 in entering an order, there is a "presumption that [the party or their attorney] received the order." *Murphy v. Murphy*, 988 A.2d 703, 710 (Pa. Super. 2010) (citation omitted).

[3] We observe that the January 17, 2025, order bears handwritten initials, which match the parties' respective initials, next to each of the four
*(Footnote Continued Next Page)*

On February 5, 2025, Father filed a petition for contempt against Mother, asserting she violated the terms of the interim custody order. Father averred Mother had prevented him from exercising his periods of supervised custody and from speaking with the Children via telephone. Petition for Contempt, 2/5/25, ¶ 2. By order entered February 21, 2025, the trial court stated it would rule on Father's contempt petition at the time of trial.[4] Order, 2/21/25, ¶ 3.

The custody trial occurred on April 21, 2025. Father appeared *pro se*. Mother appeared with her counsel, Melissa Rudas, Esquire (Attorney Rudas). The parties were the only witnesses.

As a preliminary matter, the trial court asked Father if he wanted to proceed with trial, or whether he would consider entering into a custody agreement with Mother. **See** N.T., 4/21/25, at 9-14. Father replied, "At this point, without representation, yes. Yes, I do" want to proceed to trial. **Id.** at 14. The trial court then pointed out to Father, "Well, you have chosen to appear here today without [an attorney]." **Id.** at 14-15; **see also id.** at 19 (trial court cautioning Father that *pro se* litigants are held to the same standard as represented litigants, stating, "[Y]ou're assuming all those

_____

paragraphs of the order, including the paragraph governing pretrial exchanges. **See generally** Order, 1/17/25.

[4] The trial court made no contempt finding with respect to Mother either at trial or thereafter.

responsibilities yourself[,] so not being an attorney is not an excuse."). Father responded, "Yeah, I'm ready to go for it." *Id.* at 15.

The trial court then directed Father to present his first witness. *Id.* Father replied, "I don't have any witnesses. I just have my statements here. Can I present this to [the trial court]? I have a copy for [Attorney Rudas]." *Id.* The trial court responded,

> Well, [Attorney Rudas] would have to review [Father's proffered documents (hereinafter, "Father's documentation")[5]], and if [Attorney Rudas] objects to it -- I don't know what [Father is] presenting or anything like that. Normally, … even though [Father is] representing [him]self, there are some borderlines here about being a witness and representing yourself. You still have to lay all the foundation [to introduce documentary evidence]. You don't just get to hand things up to me.

*Id.* (footnote added; paragraph break omitted); *see also id.* at 16 (Father providing copies of Father's documentation to Attorney Rudas).

---

[5] As discussed *infra*, Father's documentation was not admitted into evidence at trial. However, the certified record appears to contain some of Father's documentation, attached to Father's notice of appeal. *See* Notice of Appeal, 5/23/25, Attachment (unnumbered). In his appellate brief, Father explained that Father's documentation was

> comprised of date and timestamped written comments by [Mother] stating she wanted to stab [L.], bank statements showing payments [from Mother] to [CPS], bank statements [showing that Mother purchased] liquor 7 days before giving birth, date and timestamped statements [by Mother wherein she made] vacation plans while pregnant to have a drug and alcohol weekend with multiple men, [] paperwork [related to Mother's] latest suicide attempt, [and] date and timestamped statements [wherein Mother stated she] was not doing well mentally[.]

Father's Brief at 15.

Attorney Rudas objected to Father's belated disclosure, arguing as follows:

> With regard to what Father has handed me. … [I]t's pretty much the things [Father] would testify to. …. There are also copies of text messages, bank records and some other things. We are required … under the local rules, ten days before trial[,] to set forth a witness list and an exhibit list.[6]
>
> I did send [Mother's witness and exhibit list to Father prior to trial]. [Attorney Rudas] never received anything [from Father], so I would object to any of [Father's documentation] coming into evidence. And I have had no time to prepare for them and to know what [Father is] going to present. And that's exactly the reason [why] we have the local rule.

*Id.* at 17-18 (footnote added). The trial court noted Mother's "standing objection to any documents that [Father] may want to present." *Id.* at 18.

Father acknowledged that pursuant to the interim custody order, he was entitled to periods of supervised physical custody. *Id.* at 8. However, Father admitted that he exercised no periods of custody, citing financial considerations associated with the professional visitation supervisors (*i.e.*, the Children's Home of Easton, a non-profit organization that offers supervised visitation services). *Id.*; *see also id.* at 77 (Attorney Rudas asserting that "[Father] is refusing to see [the Children] over a $125 intake fee" required by

---

[6] Despite Attorney Rudas's representation, Northampton County has no local rule governing pretrial disclosures in child custody actions. However, this matter is governed by Pennsylvania Rule of Civil Procedure 1915.4-4(b), which we discuss *infra*. Pa.R.C.P. 1915.4-4(b); *J.S. v. R.S.S.*, 231 A.3d 942, 954 (Pa. Super. 2020) ("Pa.R.C.P. 1915.4-4(b) provides that each party must file a pre-trial statement no later than five days prior to a pre-trial conference in a custody proceeding." (footnote omitted)).

the Children's Home of Easton to commence services). The trial court pointed out that "the [C]hildren have not been with [Father] … for over a year." *Id.* at 7.

Father testified that he desired to return to the custody schedule established under the prior custody order:

> I've had unsupervised visits with [the Children]. I have watched them for weeks on end all by myself at my house. I have no problems against going back to [exercising partial physical custody] every other weekend, [plus] five weeks a year, … as it was in the [prior custody order, which] … I fought two and a half years to get.

*Id.* at 23.

Father testified that the following factors supported his request for increased physical custody time:

> I have a home. I have vehicles. I have a stable career and a job. I get to work from home. I can provide for [the Children] nonstop, which I have been doing also.
>
> * * *
>
> … I have a stable community around me. I have a stable church that I go to … multiple times a week. And I have a fellowship with them. I have plenty of community and friends and family around -- well, not so much family, but friends in the community … to support me and that will advocate for me …. I have my neighbor's letter with me saying … that I'm a good father and would be a very good father.

*Id.* at 22.

On cross-examination, Attorney Rudas extensively questioned Father with respect to numerous text message images/memes (the memes) that Father sent to L., many of which contained age-inappropriate adult content.

*See* N.T., 4/21/25, at 26-35. The trial court admitted the memes into evidence, without objection. *Id.* at 34; Plaintiff's Ex. 2. Father conceded, "I think it was a mistake" sending L. the memes. N.T., 4/21/25, at 36. Attorney Rudas then asked Father whether he suffers from any psychological issues or is being treated by a mental health professional. *Id.* Father responded in the negative. *Id.*

Attorney Rudas additionally questioned Father, "So what is keeping you specifically from seeing [the C]hildren at the Children's Home of Easton?" *Id.* at 40. Father responded as follows:

A. [Mother] refusing to pay her … registration fee.

Q. [Attorney Rudas:] So it's $125 that's keeping you from seeing [the C]hildren, correct?

A. Correct.

Q. Okay. And you are aware that you are able to pay that $125, correct?

A. I am, yes.

*Id.*

Following Mother's cross-examination of Father, the trial court, in light of Father's *pro se* status, guided him regarding the procedure for redirect examination. *Id.* at 41-42; *see also id.* (trial court stating, "[F]rankly, if there's just anything else you want [the trial court] to know -- this is your last opportunity to present evidence as a witness here."). Father then again

offered Father's documentation. *Id.* at 42. The trial court responded as follows:

> [B]ecause of [Mother's] standing objection, [the trial court] will allow [Father] to mark things, present it as an exhibit, but it may not be entered into evidence at this point. Just as a point to [Father], **I can be sympathetic to that, so I will allow him to present [Father's documentation] for [Attorney Rudas] to look at it, but not be entered into evidence.**

*Id.* (emphasis added).

Father then produced a document, seemingly related to his own medical records, which he described as follows: "This was me going to get psychological treatment for my divorce and everything going on. And them stating that I do not need it." *Id.* at 43. Attorney Rudas objected stating, "in addition to my standing objection, this purports to be notes by a doctor of psychology, so therefore, it would be hearsay." *Id.*; *see also* Pa.R.E. 802 (rule against hearsay). The trial court then explained to Father the law surrounding hearsay, N.T., 4/21/25, at 43, and stated it was "willing to accept just [Father's] testimony at this time of you saying you went to a doctor and it's your understanding that they were saying you didn't need further treatment from that." *Id.* at 43-44.

On redirect, Father produced (1) a page purportedly taken from L.'s diary, *id.* at 44-45; (2) one of L.'s drawings that, Father alleged, displayed a swastika and "SOS," *id.* at 45-46; and (3) photographs depicting Father and the Children together. *Id.* at 47.

- 10 -

Father also offered an anecdote regarding "[t]he last night that [the Children] spent at my house[.]" *Id.* at 47-48. Mother objected, asserting "[t]his is way beyond the scope of [Mother's] cross." *Id.* at 48; *see also Commonwealth v. Carpenter*, 617 A.2d 1263, 1266 (Pa. 1992) ("[R]e-direct examination is limited to answering only such matters as were drawn out in the immediately preceding examination" of the adversary (citation omitted)). The trial court overruled Mother's objection. N.T., 4/21/25, at 48. Father explained that while "at my house, [L.] couldn't fall asleep. He just kept calling for me to come in there and stay in the room with him, which I did." *Id.* Father testified that he responded to L. as follows:

> I said, Do you remember when … you started reading books to me every night? …. And he said, Yes. And I said, You know, do you miss that? And all he started doing was sobbing uncontrollably until he fell asleep. That's the last night that I saw him.

*Id.*

The following exchange then occurred between the trial court and Father:

> THE COURT: Okay. Anything else, sir?
>
> [Father]: Since I'm unable to present my packet of information, which I am being denied to do yet again.
>
> THE COURT: So, sir, you didn't follow the local rules here.
>
> [Father]: … I'm unaware of what they are or the proper procedure, and I apologize for that.
>
> THE COURT: And I appreciate that. **You are presenting your case and you're doing a fine job, sir. I've looked at what you have handed up to me** and all that. ….

- 11 -

*Id.* at 49-50 (emphasis added);[7] *see also id.* at 51 (trial court stating, "[Father], I'm not going to give you legal advice here.  I'm not going to present your case for you.  ….  **I've given you a lot of leeway at this point.**" (emphasis added)).

Nevertheless, the trial court permitted Father to make one final statement, wherein Father asserted, "I have tried to call [the Children] multiple times.  And unless I call them on Monday night at 7:00 [p.m.] or Friday night at 7:00 [p.m.] -- my call is blocked and I can't answer."  *Id.* at 53; *see also id.* at 51 (Father alleging that Mother had paid bribes to "CPS in the past.  I don't know why or what for.").[8]

Mother testified that she was employed by an insurance company, and had resided in Northampton County with the Children since 2023.  *Id.* at 58-59.  Mother represented she had no intention to move from Northampton County in the near future.  *Id.* at 59.  Mother testified that her older child, L., was enrolled in school and was doing "[v]ery well."  *Id.*; *see also id.* (Mother explaining that S. "is starting kindergarten in the fall.").  Mother stated that her godmother resides nearby in Bucks County.  *Id.*

---

[7] Father did not request a continuance to allow for him to provide Father's documentation.

[8] Mother declined to recross-examine Father.  N.T., 4/21/25, at 54.

Mother testified that Father last saw the Children on April 7, 2024. *Id.* at 56. Mother emphasized that Father declined to exercise his periods of supervised physical custody. *Id.* at 57. Mother stated that Father sometimes engages in telephone calls with the Children, but only "50 to 60 percent of the time." *Id.* Mother further denied Father's allegation that she had paid bribes to CPS. *Id.* at 58.

When asked whether the Children have any behavioral problems, Mother testified that "[s]ince the divorce, [L.] has struggled, but he has had a therapist, as well as a psychiatrist, to ensure that we are getting him any help that is needed." *Id.* at 60 (punctuation modified). Mother denied suffering from any mental health disorders herself. *Id.* Mother also denied having any problems with drug or alcohol abuse. *Id.*

Mother asserted that Father struggles with drug and alcohol abuse, which, she believed, may influence Father's bizarre behavior. *Id.* at 60-61. When asked why she has concerns about Father having unsupervised contact with the Children, Mother testified that, in April 2024,

> somebody that [Father] was dating reached out [to Mother via phone.] I didn't have concerns until the person that [Father] was dating reached out to me and said, I am concerned for your children's wellbeing[. Father] is delusional and extremely depressed[. H]as he always struggled with mental health issues?

*Id.* at 61. Mother confirmed that she has recently "noticed a decline in [Father's] mental health[.]" *Id.* In support, Mother pointed to the memes

Father sent to L., as well as "[Father's] mannerisms and his anger and animosity." *Id.* at 63.

Finally, Mother proffered a social media video post Father created, depicting him and a large quantity of documents, which was admitted into evidence and played in open court. *Id.* at 67; Plaintiff's Ex. 4. In the video, Father states, in relevant part, as follows:

> This is the mountain of paperwork that I've had to go through in order to see my children. After [Mother] failed to kill herself yet again, and after she's had another stroke …[,] this is what I've had to go through in order to see my children after my fat, toothless ex-wife … tried to kill herself and failed again. This is just to see my children. …. Because everything I do she knows about and uses against me in court because she tells my children that I don't want to see them and then files something new against me to prevent me from seeing them.

N.T., 4/21/25, at 67-68.

During Father's cross-examination of Mother, he inquired about Mother's purported suicide attempt in 2021, *i.e.*, prior to the parties' divorce. *Id.* at 72. Mother objected on the basis of relevance and staleness, pointing out her suicide attempt predated the prior custody order. *Id.* at 73. The trial court sustained the objection, but stated that it would permit Father to "rephrase [his question] or rework here[.]" *Id.* Father then asked for permission to introduce a police report, purportedly related to Mother's suicide attempt, as an exhibit. *Id.* Mother again objected on the basis of hearsay. *Id.* at 73-74; *see also id.* at 74 (Mother pointing out Father gave her no pretrial notice of the police report). The trial court sustained the objection. *Id.* at 74.

Following the close of evidence at trial, the trial court considered the parties' respective closing statements. *Id.* at 75-78. Mother argued that she "should have sole legal and physical custody." *Id.* at 78. Mother also requested a court order for professional "reunification [counseling] between Father and the [C]hildren at his expense," as well as a separate "psychological evaluation" of Father, at his expense. *Id.* The trial court then took the matter under advisement. *Id.*

On April 24, 2025, the trial court entered the final custody order underlying the instant appeal.[9] The order awarded Mother sole legal custody and primary physical custody, subject to Father's periods of supervised partial physical custody.[10] Order, 4/24/25, ¶¶ 1-3; *see also id.* ¶ 6 (permitting

_____

[9] Concomitantly with the April 24, 2025, order, the trial court filed a separate order in which it analyzed the Act's statutory best-interest factors, set forth in 23 Pa.C.S.A. § 5328(a), which a trial court must consider in making any custody ruling. *See generally* Order, 4/24/25 (analyzing the Section 5328(a) factors).

[10] Regarding Father's custodial periods, the custody order provided as follows:

> Father shall have periods of partial physical custody at the Children's Home of Easton. All costs shall be borne by Father. Father's periods of partial physical custody shall not begin until recommended in writing by [a professional] reunification counselor[.]

Order, 4/24/25, ¶ 3; *see also id.* ¶ 4 ("The parties shall cooperate with each other in good faith in an effort to have the costs of [reunification] counseling covered by insurance. Any cost of the counseling not covered by insurance shall be borne by Father."); *Rogowski v. Kirven*, 291 A.3d 50, 60 (Pa. Super. 2023) ("[P]ursuant [to] Section 5333 of the … Act, a trial court 'may, as part
*(Footnote Continued Next Page)*

- 15 -

Father telephone contact with the Children "every Tuesday and Thursday between the hours of 7:00 p.m. and 8:00 p.m.").

Father timely filed a *pro se* notice of appeal.[11] The trial court has also complied with Pa.R.A.P. 1925.

On August 28, 2025, Father filed in this Court a *pro se* Application for Correction of the Original Record (Application), pursuant to Pa.R.A.P. 1926

_____

of a custody order, require the parties to attend counseling sessions.'" (citation and quotation marks omitted)).

[11] We acknowledge Father did not file a contemporaneous Pa.R.A.P. 1925(a)(2)(i) concise statement with his *pro se* notice of appeal. ***Id.*** (mandating that in children's fast track appeals, the "concise statement of errors complained of on appeal shall be filed and served **with** the notice of appeal." (emphasis added)). Nevertheless, this Court accepts the issues that Father set forth in his notice of appeal as his concise statement. ***See Jacobs v. Jacobs***, 884 A.2d 301, 305 (Pa. Super. 2005) ("[I]f the failure to comply with the rules of appellate procedure does not impede review of the issues or prejudice the parties, we will address the merits of the appeal." (citation omitted)); Pa.R.A.P. 105(a) (stating that the Rules of Appellate Procedure shall be liberally construed, and an appellate Court may disregard the Rules in the interest of expediting a decision).

Furthermore, we acknowledge that the issues Father identified in his notice of appeal vary slightly from those set forth in his appellate brief's statement of questions involved. ***Compare*** Notice of Appeal, 5/23/25, at 1 (unpaginated), ***with*** Father's Brief at 5-6. This Court has held that, where a *pro se* appellant raises an issue in an appellate brief that is not preserved in their Pa.R.A.P. 1925(a)(2)(i) statement, we may find the issue waived. ***In the Interest of: G.D. v. D.D.***, 61 A.3d 1031, 1036 n.3 (Pa. Super. 2013); ***see also*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement … are waived."). Nevertheless, we overlook this transgression and deem Father's issues preserved. ***See Durning v. Balent/Kurdilla***, 19 A.3d 1125, 1127 n.2 (Pa. Super. 2011) (addressing merits of appellant's issues, which "were raised, or fairly suggested by, issues raised in [appellant's] concise statement").

(governing correction or modification of the record). Father sought "to correct the appellate record by adding omitted video evidence critical to the appeal[,]" which was not presented at trial. Application, 8/28/25, at 1; ***see also id.*** ("The videos depict [L.] speaking in terms that are abnormal and show signs of mental abuse.").[12] We denied the Application by order entered September 18, 2025.

On appeal, Father presents four issues for our review:

1. Did the [trial] court violate [Father's] due process rights under Pa. Const. Art. 1, 9 by excluding all [of Father's documentation] in a custody/visitation proceeding due to [Father's] unawareness, as a *pro se* litigant, of the requirement to notify opposing counsel, without providing guidance or an opportunity to comply, which the trial court permitted?

2. Did the trial court abuse its discretion by excluding all of [Father's documentation] based solely on the failure to notify opposing counsel under Pa.[]R.C.P. 1915.6,[13] without assessing the evidence's relevance to the [Children's] best interests under 23 Pa.C.S.[A. §] 5328, which the trial court permitted?

3. Did the trial court err by unfairly applying procedural rules, such as Pa.[]R.C.P. 1915.6 and Northampton County Local Rule C1915.3-1,[14] against [Father], a *pro se* litigant, by excluding evidence without informing or allowing correction, which the trial court permitted?

_____

[12] Father included an electronic copy of the video evidence with his Application.

[13] Rule 1915.6 governs the joinder of parties in child custody and related actions. ***See generally*** Pa.R.C.P. 1915.6. However, Rule 1915.6 in no way pertains to Father's claims, none of which implicate joinder.

[14] Northampton County has no "Local Rule C1915.3-1." ***But see*** Northampton County Local Rule N1915.1(3) (governing the procedure for pleadings that require a child custody conference before a custody conference officer).

> 4. Did the [trial] court's exclusion of [Father's documentation] prevent a full assessment of the [Children's] best interests under 23 Pa.C.S.[A. §] 5328, rendering the custody/visitation order legally deficient, which the trial court permitted?

Father's Brief at 5-6 (footnotes added). Because Father's issues are interrelated, we address them together.

Father claims the trial court improperly excluded Father's documentation from evidence at trial, as a sanction for his "technical failure" to comply with the January 17, 2025, order, which precluded the court from having a complete record to weigh the best interests of the Children. **See id.** at 12-18. In his first issue, Father asserts the trial court deprived him of due process, where it "excluded all of [Father's documentation] (*e.g.*[,] documents showing parental fitness) because [Father], a *pro se* litigant, was unaware of the requirement to notify opposing counsel." **Id.** at 13 (citation omitted).

In his second issue, Father complains the trial court gave him "no guidance or opportunity to correct the procedural error, despite [Father's] good-faith attempt to present evidence relevant to the [C]hildren's best interests under 23 Pa.C.S.[A. §] 5328."[15] Father's Brief at 14. Father avers the trial court improperly excluded Father's documentation

---

[15] Father does not allege that the trial court erred in its consideration of the statutory best-interest factors of 23 Pa.C.S.A. § 5328(a), which a trial court must consider "[i]n ordering any form of custody[.]" **Id.** "As this potential claim does not implicate jurisdiction, we do not address it *sua sponte*." **Frierson v. Love**, 289 A.3d 53, 538 MDA 2022 (Pa. Super. 2022)
*(Footnote Continued Next Page)*

without assessing its relevance or offering a chance to remedy the lack of notice to opposing counsel. This blanket exclusion was unreasonable, as the evidence was material to statutory custody factors, such as parental duties, child safety, [and] parental fitness.

*Id.* at 15 (internal record citation omitted); ***see also id.*** (asserting the trial court's "failure to balance procedural compliance with the need for a complete record constitutes an abuse of discretion.").

In his third issue, Father claims the trial court "unfairly applied procedural rules against a *pro se* litigant." *Id.* at 16 (some capitalization modified). Father contends the trial court

knew [that Father] was *pro se* but failed to inform [Father] of the requirements to notify opposing counsel of evidence …. This strict application of rules without guidance or a chance to comply (*e.g.*, via continuance) violated fairness principles.

*Id.*; ***see also id.*** (asserting the exclusion of Father's documentation "effectively barr[ed Father] from presenting a case.").

Finally, Father argues that, by excluding Father's documentation, the trial court was prevented from conducting an adequate evaluation of the Children's best interests under 23 Pa.C.S.A. § 5328(a). ***See*** Father's Brief at

---

(unpublished memorandum at 8 n.4) (in a child custody dispute, declining to address on appeal any "potential claim" by the *pro se* mother regarding the trial court's weighing of the Section 5328(a) factors, where mother raised no such claim, stating that "[i]t is improper for this Court to address [a] non-jurisdictional issue *sua sponte* as a grounds for reversal.") (quoting ***Turner Constr. v. Plumbers Local 690***, 130 A.3d 47, 63 (Pa. Super. 2015)); ***see also*** Pa.R.A.P. 126(b) (providing this Court's unpublished memoranda filed after May 1, 2019, may be cited for their persuasive value).

17-18. According to Father, the "incomplete record likely skewed the [trial] court's ruling, as it lacked [Father's] perspective" on matters relevant to the Children's best interests. *Id.* at 17. Accordingly, Father asserts, this "Court should reverse and remand for a hearing that includes [Father's documentation] to ensure a proper best-interests analysis." *Id.* at 18.

Mother counters the trial court properly excluded Father's documentation at trial, where Father failed to comply with an unambiguous order mandating pre-trial exchanges, and his status as a *pro se* litigant entitles him to no special benefit. *See* Mother's Brief at 2-4. Mother points out that, under Pennsylvania law, *pro se* litigants

> must adhere to all laws, rules, and regulations that apply to lawyers, including the Rules of Civil Procedure. Here, Father failed to comply with the pretrial deadlines set by the trial court, and did not identify and exchange his proposed exhibits with opposing counsel. Despite this, the trial court permitted Father to present his case during trial and to actively participate, albeit within the bounds of the rules of evidence.

*Id.* at 3-4 (some capitalization modified).

> Although Father argues, throughout his entire appellate brief, that he should have been provided guidance and ultimately [granted] great leeway due to his status as a *pro se* litigant, the law of the Commonwealth of Pennsylvania simply does not support his position.

*Id.* at 2 (some capitalization modified). Mother concludes, "the fact that Father is unhappy with the decision of the trial court, after a full trial, is not a legal basis upon which the well-reasoned and well-supported order of the trial court can be reversed." *Id.* at 4 (some capitalization modified).

To begin, we recognize that "[o]ur standard of review over a custody order is for a gross abuse of discretion." ***Rogowski***, 291 A.3d at 60 (citation omitted); ***see also Wilson v. Smyers***, 284 A.3d 509, 520 (Pa. Super. 2022) (describing abuse of discretion as a "deferential standard of review"). "An abuse of discretion is not merely an error of judgment[.]" ***Mazzarese v. Mazzarese***, 165 A.3d at 965 (Pa. Super. 2024) (citation omitted). Rather,

> [a]ppellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will.

***R.L. v. M.A.***, 209 A.3d 391, 395 (Pa. Super. 2019) (citation and brackets omitted).

"A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." ***S.T. v. R.W.***, 192 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted). "[D]ue process is required during [child] custody proceedings." ***E.B. v. D.B.***, 209 A.3d 451, 463 (Pa. Super. 2019); ***see also J.C.D. v. A.L.R.***, 303 A.3d 425, 433 (Pa. 2023) ("The right to make decisions concerning the care, custody, and control of one's children is one of the oldest fundamental rights protected by the Due Process Clause.") (quoting ***Hiller v. Fausey***, 904 A.2d 875, 885 (Pa. 2006)). This Court has stated that "[f]ormal notice **and an opportunity to be heard** are fundamental components of due process when a person may be deprived in a legal proceeding of a liberty interest, such as … a parent's custody of [his or] her child." ***Everett v.***

- 21 -

*Parker*, 889 A.2d 578, 580 (Pa. Super. 2005) (citation omitted; emphasis added); *see also id.* ("Notice, in our adversarial process, ensures that each party is provided adequate opportunity to prepare and thereafter properly advocate its position, ultimately exposing all relevant factors from which the finder of fact may make an informed judgment." (citation omitted)).

As stated *supra*, Pennsylvania Rule of Civil Procedure 1915.4-4 governs pretrial disclosures and related matters in child custody actions, and provides, in relevant part, as follows:

**(b)** Pre-Trial Statement.

**(1)** Not later than five days prior to the pre-trial conference, each party **shall** file a pre-trial statement with the prothonotary and serve a copy upon the court and the other party or the party's counsel.

**(2)** The pre-trial statement shall include, together with any additional information required by special order of the court, the following matters:

**(i)** the name and address of each expert whom the party intends to call as a witness at trial;

**(ii)** the name and address of each person the party intends to call as a witness at trial and the relationship of that witness to the party. Inclusion of a witness on the pre-trial statement constitutes an affirmation that the party's counsel or the self-represented party has communicated with the witness about the substance of the witness's testimony prior to the filing of the pre-trial statement; and

**(iii)** a proposed order setting forth the custody schedule requested by the party.

**(c)** Exhibits. In addition to subdivision (b)(2), **the party shall include any proposed exhibits to be introduced at trial**, including the expert's report, **as part of the pre-trial statement**

- 22 -

**served upon the other party or other party's counsel**, but the proposed exhibits shall not be included with the pre-trial statement served upon the court.

**(d)** Sanctions. **If a party fails to file a pre-trial statement** or otherwise comply with the requirements of subdivisions (b) and (c), **the court may sanction the party as provided in Pa.R.C**[].**P. 4019(c)(2)** and (c)(4).

Pa.R.C.P. 1915.4-4(b), (c) and (d) (emphasis added).

The sanctions specified under Rule 4019(c) include, *inter alia*, the following:

**(2)** an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or **prohibiting such party from introducing in evidence designated documents**, things or testimony, or from introducing evidence of physical or mental condition[.]

Pa.R.C.P. 4019(c)(2) (emphasis added); ***see also Nat'l Brokers of Am., Inc. v. Jordan***, 307 A.3d 1206, 1219 (Pa. Super. 2023) ("[Rule] 4019 generally authorizes trial courts to impose sanctions for a party's failure to comply with a discovery order.").

The decision whether to sanction a party for the failure to comply with a discovery order, and the degree of that sanction, are within the discretion of the trial court. This Court will disturb such a sanction only where the trial court has abused its discretion.

***Jacobs***, 884 A.2d at 305 (internal citations omitted). Finally, "[q]uestions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and may be reversed on appeal only when a clear abuse of discretion was present." ***E.K. v. J.R.A.***, 237 A.3d 509, 522-23 (Pa. Super. 2020) (citation omitted).

- 23 -

Here, in its Rule 1925(a) opinion, the trial court concluded it properly exercised its discretion in sanctioning Father under Rule 4019(c)(2), reasoning as follows:

> By order dated January 17, 2025, the parties were to "exchange expert reports and lists of exhibits and witnesses on or before ten (10) days before trial."[16]  [] Order of Court, Jan. 17, 2025[, ¶ 3]. [Father] failed to do so.  Pa.R.C.P. 4019(c)(2) allows a court to prohibit a party from introducing evidence if they fail to comply with discovery orders.  **See J.S.** …, 231 A.3d [at] 954-55 … ([determining that a] trial court's decision to prevent the father's counsel from cross-examining witnesses was a permissible sanction under Rule 4019(c)(2) due to the father's failure to file a pre-trial statement[,] in compliance with the court's scheduling order).  This was a proper sanction for [Father's] failure to comply with the [trial] court's January 17, 2025 order.
>
> While the [trial] court barred [Father's documentation] from being entered into evidence, the court did allow [Father] to mark and present his exhibits.  [**See** N.T., 4/21/25,] at 42, 44-45[; **see also id.** at 50 (trial court stating to Father, "I've looked at what you have handed up to me")].  [Father] is incorrect when he states that the court denied him an opportunity to "present" or "introduce" evidence.

Trial Court Rule 1925(a) Opinion, 6/23/25, ¶¶ 1-2 (footnote added; paragraph numbering omitted; some capitalization modified).

The trial court's foregoing reasoning is supported by the record and the law, and we agree with its determination.  Pursuant to **J.S.**, the trial court had the authority to sanction Father under Rule 4019(c)(2), and exclude Father's documentation from evidence; his *pro se* status entitled him to no special

---

[16] We reiterate that Father placed his initials on the order next to the provision requiring pretrial exchanges.  **See** Order, 1/17/25, ¶ 3.

- 24 -

benefit.  ***See J.S.***, 231 A.3d at 954-55; ***see also Smithson v. Columbia Gas of PA/NiSource***, 264 A.3d 755, 760 (Pa. Super. 2021) ("A *pro se* litigant must comply with the procedural rules set forth in the Pennsylvania Rules of [] Court." (citation omitted)).

As discussed *supra*, at trial, the trial court repeatedly acknowledged its mindfulness of Father's *pro se* status, and guided Father when appropriate. ***See*** N.T., 4/21/25, at 14-15, 19, 41; ***see also id.*** at 42 (trial court stating, "I can be sympathetic to" Father's *pro se* status).  At the beginning of trial, **the trial court cautioned Father that *pro se* litigants are held to the same standard as represented litigants, stating, "[Y]ou're assuming all those responsibilities yourself[,] so not being an attorney is not an excuse."  *Id.*** at 19 (emphasis added); ***see also S.S. v. T.J.***, 212 A.3d 1026, 1032 (Pa. Super. 2019) ("[A]ny person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." (citation omitted)).  Father acknowledged the trial court's caution and stated he still wished to proceed *pro se* at trial.  ***Id.*** at 15.  Father did not request a continuance.

Although Father's documentation was not officially admitted into evidence at trial, the trial court (1) permitted Father to present Father's documentation to the court and opposing counsel, ***id.*** at 42, 44-45; (2)

allowed Father to testify regarding some of Father's documentation,[17] *id.* at 43-48; and (3) expressly noted that it had afforded Father "a lot of leeway" in presenting his case. *Id.* at 51. Thus, Father was afforded "an opportunity to be heard." *Everett*, 889 A.2d at 580.

Based on the foregoing, none of Father's issues entitle him to relief. As we discern no abuse of discretion or error of law by the trial court in entering the custody order, following a full and fair trial, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/16/2025

---

[17] Indeed, as explained *supra*, the trial court permitted Father to offer testimony regarding some of his documents over Mother's objection. *See* N.T., 4/21/25, at 48.